UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRIAN NORRIS, SR., )
)
    Plaintiff, )
)
v. ) Cause No. 3:15-cv-466 RLM-MGG
)
MYERS SPRING COMPANY INC., )
*et al.*, )
)
    Defendants. )

# OPINION AND ORDER

## I. BACKGROUND

On or about March 15, 2013 while on a jobsite in Collegeville, Pennsylvania, plaintiff Brian Norris was elevated about four and one-half feet on a scaffolding when it allegedly collapsed. On March 10, 2015, Mr. Norris brought a products liability action against Myers Spring in the Court of Common Pleas of Philadelphia County, Pennsylvania. Mr. Norris argues there were defects in the design of the scaffolding and manufacture of the spring. The focus of Mr. Norris' claim is the condition of a latch for the scaffolding and the latch's spring component at the time of the accident. Myers Spring manufactured the spring to Sonny Scaffolding's specifications and incorporated it into the product's latch system. It is undisputed this design, manufacture and assembly occurred entirely within Indiana.

Myers Spring removed the case to the United States District Court for the Eastern District of Pennsylvania and moved to dismiss under Fed. R. Civ. P.

12(b)(2) for lack of personal jurisdiction. The court granted the motion and transferred the case to this court under 28 U.S.C. § 1631. Norris v. Myers Spring Company, et al., No. 5:15-cv-2687 (E.D. Pa. Sept. 4, 2015). Myers Spring now asks this court to determine which state's substantive law that should apply to this case under Indiana's choice-of-law principles. For the reasons stated below, Pennsylvania laws apply.

## II. DISCUSSION

In resolving a conflict of laws question, a federal court sitting in diversity generally applies the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941). The situation is more complicated when the federal court deciding the question has had the case transferred to it from another federal court. When a case is transferred to cure a lack of jurisdiction, the transferee forum's law must apply, lest plaintiffs from enjoying choice-of-law advantages to which they wouldn't have been entitled in the proper forum. W. Smelting & Metals, Inc. v. Slater Steel, Inc., 621 F. Supp. 578, 581–582 (N.D. Ind. 1985) (citing Tillett v. J.I. Case Co., 756 F.2d 591, 593 n.1 (7th Cir. 1985) (citations omitted)). This conclusion is supported by 28 U.S.C. § 1631. If a case is transferred because of a want of jurisdiction, the action "shall proceed as if it had been filed in . . . the court to which it is transferred . . . ." 28 U.S.C. § 1631. Accordingly, this court will apply Indiana's choice-of-law rules.

Indiana's choice-of-law analysis involves multiple inquiries in tort cases. As a preliminary matter, the court first determines whether the differences

between the laws of the states are "important enough to affect the outcome of the litigation." Simon v. United States, 805 N.E.2d at 804–805 (citing Hubbard Mfg. Co., v. Greeson, 515 N.E.2d 1071, 1073 (7th Cir. 1987). If so, the presumption is that the traditional *lex loci delicti* rule (the place of the wrong) will apply. Hubbard v. Greeson, 515 N.E.2d at 1073. Under this rule, the court applies the substantive laws of "the state where the last event necessary to make an actor liable for the alleged wrong takes place." Id. This presumption can be overcome if the court is persuaded that "the place of the tort 'bears little connection' to this legal action." Id. at 1074.

If the location of the tort is insignificant to the action, the court considers other contacts that might be more relevant, such as: where the conduct causing the injury occurred; the residence or place of business of the parties; and where the relationship is centered. Hubbard v. Greeson, 515 N.E.2d at 1073 (citing Restatement (Second) of Conflict of Laws § 145(2) (1971)). These factors aren't an exclusive list, nor are they necessarily relevant in every case. All contacts "should be evaluated according to their relative importance to the particular issues being litigated." Hubbard v. Greeson, 515 N.E.2d at 1074.

The parties agree that Indiana's choice-of-law rule under Hubbard v. Greeson and Simon v. United States governs whether Indiana or Pennsylvania substantive law is applicable to Mr. Norris' claims. The parties also agree the differences between Indiana and Pennsylvania law would affect the outcome of this case. The remaining issue is whether the place of the injury—Pennsylvania—is insignificant.

3

Myers Spring argues that Pennsylvania, where Mr. Norris was injured, bears little connection to this case. Myers Spring argues the record doesn't reflect any evidence suggesting the scaffolding and/or spring was designed, manufactured, or assembled in Pennsylvania. So, Myers Spring says, Pennsylvania bears little connection to this case as "the most important relevant factor is where the conduct causing the injury occurred" because "an individual's actions and the recovery available to others as a result of those actions should be governed by the law of the state in which he acts." Simon v. United States, 805 N.E. 2d at 807-808. The tortious conduct, as Myers Spring sees it, occurred in Indiana, and the sale of the scaffolding to Mr. Norris' Pennsylvania employer was merely fortuitous.

Myers Spring also cites to several cases to support its argument that Pennsylvania law is insignificant. First, in Large v Mobile Tool Intern, Inc., the defendant's subsidiary MTI Insulated Products, Inc. was an Indiana corporation. The plaintiff Large was a North Carolina citizen employed in Virginia. The accident occurred along a roadside in Virginia. Mr. Large's employer was a Virginia corporation. The aerial lift which was the subject of the suit was designed (and apparently manufactured) in Indiana. After Mr. Large's accident, Mobile Tool called the truck back to Fort Wayne, Indiana for evaluation and reconditioning, and it was apparently in Fort Wayne where parts of the lift were scrapped. This court held that Virginia law was insignificant, because "this case is about the aerial lift, the design of the aerial lift, and the destruction of parts of the aerial lift." These were all Indiana issues, and so the law of Indiana applied.

4

Large v. Mobile Tool Int'l, Inc., No. CIV 102CV177, 2007 WL 2187106, at *3 (N.D. Ind. July 27, 2007).

In Hubbard v. Greeson, the plaintiff filed a wrongful death action in Indiana on behalf of her husband, who was killed while using an aerial lift in Illinois. Hubbard v. Greeson, 515 N.E.2d at 1072. The Indiana Supreme Court held the use of *lex loci deliciti* was too harsh, and Indiana law should apply. Id. at 1073. The court acknowledged that the decedent died in Illinois, the coroner's inquest was held in Illinois, and the surviving family received workers' compensation benefits under Illinois law. Id. at 1074. Still, the court held that Illinois bore little connection to the action, and Indiana law applied, reasoning that, among other things, "[t]he plaintiff's two theories of recovery relate to the manufacture of the lift in Indiana . . . , " and that the "parties' relationship was centered therein." Id.

This court disagrees with Myers Spring's analysis. The court of appeals didn't consider the second prong of Indiana's choice-of-law analysis in Land v. Yamaha Motor Corp., because the place of injury wasn't insignificant. Land v. Yamaha Motor Corp., 272 F.3d 514, 517 (7th Cir. 2001). Charles Land had been injured while operating the WaveRunner boat in Indiana. He was a resident of Indiana, the owner of the boat was a resident of Indiana, and the boat had been garaged and serviced in Indiana for a decade before it caused Mr. Land's injury. Land v. Yamaha Motor Corp., 272 F.3d at 517.

The Lands argued that California, where the Yamaha was incorporated and where Yamaha's allegedly tortious conduct occurred, had greater relevance.

The Lands cited to several cases in which courts have found the place of injury to be insignificant. But nothing in the record indicated that the WaveRunner had ever been used outside of Indiana. The court of appeals reasoned: "it was not mere fortuity that the injury occurred in Indiana, as the Lands suggested by comparing this choice-of-law determination with those involving pass-through automobile or airplane accidents in which the place of the injury is given little weight, and the argument that Indiana's contacts have little or no relevance to the legal action simply cannot withstand scrutiny." The choice-of law analysis ended with step one. Land v. Yamaha Motor Corp., 272 F.3d at 517.

The Land v. Yamaha court also addressed the second prong as it relates to the Hubbard decision: "Indiana does not adhere to the most significant relationship analysis, however, and [Indiana] has not signaled that it intends to overrule Hubbard. Although Hubbard does note some discomfort with the rigid place of injury, or *lex loci delicti*, approach, it still adheres to an analysis that uses the place of injury as a baseline." Land v. Yamaha, 272 F.3d at 517; (citing Hubbard v. Greeson, 515 N.E.2d at 1073–1074). The court explained that if the place of injury is not insignificant, courts must apply its law regardless of the greater interest another state may have. Land v. Yamaha, 272 F.3d at 517.

The cases Myers Spring cites would be helpful if today's decision reached the second prong in the choice of law analysis. But the second prong can be considered only if the place of the wrong—Pennsylvania—is insignificant. Large v. Mobile Tool Intern and Hubbard v. Greeson involved "pass through" accidents in which the courts would give the place of injury little weight, as described in

6

Land v. Yamaha. Myers Spring says the evidence doesn't show where the scaffolding was shipped after its manufacture in Indiana, but there's no doubt that the scaffolding made it to Pennsylvania by 2005. Nothing in record suggests the scaffold ever left Pennsylvania or that Myers Spring serviced the defective spring at any time before or after Mr. Norris's accident.

Pennsylvania's contacts satisfy the *lex loci delicti* baseline. Myers Spring, an Indiana corporation, manufactured and sold the allegedly defective spring in Indiana. The spring was then shipped to Sonny Scaffolding in Indiana, which incorporated the spring into the scaffolding there. Following the manufacture and assembly of the scaffolding in Indiana, Sonny Scaffolding sold and shipped the scaffold to Pennsylvania. It's also undisputed that Mr. Norris, a Pennsylvania resident, purchased the scaffold from his employer United, a Pennsylvania company. Mr. Norris was working for United at the time of the accident. The scaffolding was in Pennsylvania since 2005. Indiana's contacts might be found to be more significant if the court reached the second prong of the choice of law analysis, but it can't be said that Pennsylvania's contacts are insignificant as Indiana's modified *lex loci delicti* rule uses that term. It wasn't merely fortuitous that the injury occurred in Pennsylvania, *see* Land v. Yamaha, 272 F.3d at 517, so the analysis ends at step one. Pennsylvania law provides the rule of decision in this case. The transfer of this case under § 1631 gave Myers Spring the benefit of the forum's choice of law rules, but not the forum's law itself.

III. CONCLUSION

For the foregoing reasons, the motion to determine applicable substantive law is GRANTED, and the law of Pennsylvania provides the rule of decision.

SO ORDERED.

ENTERED: <u>October 19, 2017</u>

<u>　/s/ Robert L. Miller, Jr.　</u>
Judge
United States District Court